**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **LAURA SOSH-LIGHTSY,** | **No. _____** |
|     **Plaintiff,** | |
| **v.** | **JURY DEMAND** |
| **DR. SIDNEY McPHEE, in his individual capacity and in his official capacity as President of Middle Tennessee State University; and DR. DANNY KELLEY, in his individual capacity and in his official capacity as the Interim Vice President for Student Affairs and Dean of Students of Middle Tennessee State University,** | |
|     **Defendants.** | |

## COMPLAINT

For her Complaint under the First Amendment to the United States Constitution and 42 U.S.C. § 1983 against Defendants Dr. Sidney McPhee ("Dr. McPhee"), in his individual capacity and in his official capacity as President of Middle Tennessee State University ("MTSU"), and Dr. Danny Kelley ("Dr. Kelley"), in his individual capacity and in his official capacity as the Interim Vice President for Student Affairs and Dean of Students of MTSU (collectively, "MTSU Defendants"), Plaintiff Laura Sosh-Lightsy ("Ms. Sosh-Lightsy" or "Plaintiff") states as follows:

### INTRODUCTION

1.    This case arises from a public university's rash decision to punish a long-serving administrator for engaging in constitutionally protected speech on a matter of undeniable public concern. The First Amendment safeguards not only the right to express popular or comfortable views, but also those that may "invite dispute." *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949). As

the Supreme Court has declared, "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion, or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

2.     Ms. Sosh-Lightsy devoted more than two decades to MTSU and its students. Plaintiff was abruptly terminated overnight, less than four hours after making comments on her private social media page, not because her work performance faltered or because of any actual disruption at MTSU but because her viewpoint sparked political backlash.  There was no interruption of teaching or services at MTSU and no impairment of Plaintiff's ability to perform her job.  A former MTSU student and Republican Party operative, Matthew Hurtt, and a sitting Republican United States Senator from Tennessee, Marsha Blackburn ("Senator Blackburn"), did not agree with Ms. Sosh-Lightsy, and Hurtt and Senator Blackburn used their positions to pressure MTSU to retaliate against Plaintiff.  The MTSU Defendants caved to this political pressure and retaliated against Ms. Sosh-Lightsy for engaging in constitutionally protected speech.

3.     Plaintiff seeks declaratory relief and damages against the MTSU Defendants for their unconstitutional conduct.

4.     Specifically, on September 10, 2025, the MTSU Defendants terminated Ms. Sosh-Lightsy's employment as Associate Dean of Student Care and Conduct in retaliation for Plaintiff's private posts on her personal social media account concerning the murder of Charlie Kirk ("Mr. Kirk"), a conservative political commentator and the founder of the 501(c)(3) nonprofit organization Turning Point USA ("TPUSA").

5.     Plaintiff's private posts on her personal social media account on a matter of public concern are speech protected by the First Amendment.  Ms. Sosh-Lightsy spoke as a private citizen

on a matter of public concern, namely Mr. Kirk's murder, and Plaintiff's interest in speaking on that topic outweighs any contrary interest of the MTSU Defendants.

6.     The MTSU Defendants took adverse actions against Ms. Sosh-Lightsy that would deter a person of ordinary firmness from continuing in speech protected by the First Amendment, including but not limited to terminating Plaintiff's employment.

7.     The MTSU Defendants' termination of Ms. Sosh-Lightsy's employment was motivated by Plaintiff's protected speech.

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over Ms. Sosh-Lightsy's claims against the MTSU Defendants under 28 U.S.C. §§ 1331 and 1343(a)(3).  Plaintiff's claims against the MTSU Defendants arise under the laws of the United States, namely 42 U.S.C. § 1983, and seek to redress a violation of the U.S. Constitution.

9.     The Court has the authority to grant declaratory relief to Ms. Sosh-Lightsy on her claims against the MTSU Defendants under 28 U.S.C. §§ 2201 and 2202.

10.    This Court has personal jurisdiction over Dr. McPhee.  He performs his duties as President of MTSU in this District.

11.    This Court has personal jurisdiction over Dr. Kelley.  He performs his duties as Interim Vice President for Student Affairs and Dean of Students of MTSU in this District.

12.    Venue for Plaintiff's claims against the MTSU Defendants is proper in this Court under 28 U.S.C. § 1391(b).  A substantial part of the events giving rise to this action occurred within this District.

## PARTIES

13.    Ms. Sosh-Lightsy is an individual; she resides in Rutherford County, Tennessee.

3

14.     Dr. McPhee is an individual; on information and belief, he resides in Rutherford County, Tennessee.

15.     At all relevant times, Dr. McPhee has been the President of MTSU.

16.     Dr. Kelley is an individual; on information and belief, he resides in Davidson County, Tennessee.

17.     At all relevant times, Dr. Kelley has been the Interim Vice President for Student Affairs and Dean of Students of MTSU.

18.     At all relevant times, the First Amendment applied to Dr. McPhee in his individual capacity and in his official capacity as President of MTSU.

19.     At all relevant times, the First Amendment applied to Dr. Kelley in his individual capacity and in his official capacity as Interim Vice President for Student Affairs and Dean of Students of MTSU.

20.     At all relevant times, 42 U.S.C. § 1983 applied to Dr. McPhee in his individual capacity and in his official capacity as President of MTSU.

21.     At all relevant times, 42 U.S.C. § 1983 applied to Dr. Kelley in his individual capacity and in his official capacity as Interim Vice President for Student Affairs and Dean of Students of MTSU.

**FACTS**

**Plaintiff's Employment with MTSU Prior to September 10, 2025**

22.     Ms. Sosh-Lightsy began working for MTSU in 2004 as Assistant Dean for Judicial Affairs and Mediation Services.

23.     MTSU promoted Plaintiff to the role of Associate Dean of Student Care and Conduct in January 2025.

4

24.     Additionally, from 2011 until her termination in 2025, Ms. Sosh-Lightsy served as Deputy Coordinator for Title IX compliance at MTSU.

25.     Furthermore, from approximately 2005 or 2006 until approximately 2015 or 2016, Plaintiff taught a class at MTSU approximately once a year, specifically a three-hour credit university seminar class to assist incoming MTSU students adjust to college life; the course covered topics such as resource management, learning skills, study skills, and MTSU vernacular.

26.     During the two decades that Plaintiff was responsible for student conduct and disciplinary processes in her various roles at MTSU, no one has suggested that Ms. Sosh-Lightsy could not perform her duties impartially or has filed a complaint alleging that Plaintiff acted with bias or a lack of impartiality prior to September 10, 2025.

27.     In Ms. Sosh-Lightsy's last performance review during her employment with MTSU, dated July 8, 2025, Plaintiff received a rating of Exceeds Expectations.

28.     Evaluating Ms. Sosh-Lightsy's customer service skills in Plaintiff's last evaluation, her supervisor wrote that Ms. Sosh-Lightsy "provides quality, timely, efficient and friendly service to constituents"; "[f]osters cooperative relationships both inside and outside the department"; and "[e]nhances student learning experience and promotes a positive image at MTSU."

29.     Plaintiff has a long history of assessing and resolving student conduct and/or disciplinary issues involving students of all political persuasions, including politically conservative student organizations like MTSU's College Republicans and MTSU's TPUSA and politically liberal student organizations like MT Lambda, which advocates for LGBTQIA+ rights.

30.     Ms. Sosh-Lightsy assessed and resolved a student conduct matter involving the College Republicans and TPUSA at MTSU just a few weeks prior to her firing.

31.     In assessing and resolving that matter concerning the College Republicans and

TPUSA, Plaintiff utilized the same processes and provided the same opportunities for development to the College Republicans and to TPUSA as Ms. Sosh-Lightsy did when assessing and resolving matters concerning MT Lambda and other organizations with differing political viewpoints.

**Mr. Kirk's Murder and Plaintiff's Facebook Posts on September 10**

32.     On the morning of September 10, 2025, Mr. Kirk was shot and killed on the campus of Utah Valley University.

33.     Mr. Kirk's murder engendered immense public interest and scrutiny, beginning on September 10, making it an archetypal matter of public concern.

34.     Many Americans posted on social media platforms about Mr. Kirk's murder and his previous public statements, especially Mr. Kirk's statements concerning gun violence, school shootings, and the Second Amendment.

35.     On March 27, 2023, a gunman killed three children and three adults at The Covenant School in Nashville, Tennessee.

36.     At an event hosted by a division of TPUSA on April 5, 2023, in Salt Lake City, Utah, just nine days after The Covenant School shooting, Mr. Kirk made the following statement: "I think it's worth to have a cost of, unfortunately, some gun deaths every single year so that we can have the Second Amendment to protect our other God-given rights. That is a prudent deal."

37.     Many Americans, including Plaintiff, are concerned about the prevalence of gun-violence deaths in the United States, especially those deaths that occur in schools.

38.     The March 27, 2023, shooting at The Covenant School was the 130th mass shooting in the United States in 2023.

39.     Since 2020, firearms have killed more Americans aged 1 to 24 than any other cause of death, including motor vehicle accidents and cancer.

40.     In the evening on September 10, Plaintiff made a series of posts about Mr. Kirk and his political messages, especially his prior statements concerning gun violence, on her personal Facebook page.

41.     Ms. Sosh-Lightsy's personal Facebook page is not public; only Plaintiff's Facebook friends can see her posts.

42.     Ms. Sosh-Lightsy's Facebook page contains a disclaimer; it states that "[t]he ideas/commentary shared here on [Plaintiff's] personal page may not reflect the ideologies of [her] employers."

43.     Plaintiff made her first Facebook post concerning Mr. Kirk's murder and his prior statements concerning gun violence on September 10 at 7:03 p.m., reproduced below:



44.     Ms. Sosh-Lightsy made her second Facebook post concerning Mr. Kirk's murder

and his prior statements concerning gun violence on September 10 at 7:17 p.m., reproduced below:



45.     Plaintiff made her third Facebook post concerning Mr. Kirk's murder and his prior statements concerning gun violence on September 10 at 8:55 p.m., reproduced below:



46.     Beginning at approximately 7:43 p.m. on September 10, a former MTSU student and one of Ms. Sosh-Lightsy's Facebook friends, Matthew Hurtt ("Hurtt")—who now works as a political operative for the Republican Party in Arlington, Virginia—began posting screenshots of Plaintiff's Facebook posts concerning Mr. Kirk's murder and his prior statements concerning gun violence on his Hurtt's X social media account (https://x.com/matthewhurtt).

47.     Between approximately 7:43 p.m. and 9:05 p.m. on September 10, Hurtt posted screenshots of all three of Ms. Sosh-Lightsy's posts above concerning Mr. Kirk's murder and his prior statements concerning gun violence to his X account.

48.     Hurtt made his first X post publicizing Plaintiff's private Facebook posts with the apparent intent of causing the termination of her employment with MTSU at approximately 7:43 p.m. on September 10, reproduced below:



49. Hurtt made his second X post publicizing Ms. Sosh-Lightsy's private Facebook posts with the apparent intent of causing the termination of her employment with MTSU at 7:47 p.m. on September 10, reproduced below:



50. Hurtt made his third X post publicizing Plaintiff's private Facebook posts with the apparent intent of causing the termination of her employment with MTSU at 7:56 p.m. on September 10, reproduced below:



51.     Hurtt made his fourth X post publicizing Ms. Sosh-Lightsy's private Facebook posts with the apparent intent of causing the termination of her employment with MTSU at 9:05 p.m. on September 10, reproduced below:



52.     At 9:33 p.m. on September 10, Senator Blackburn reposted one of Hurtt's X posts with an additional message, explicitly advocating for Plaintiff to be fired, reproduced below:



53. Prior to September 10, Ms. Sosh-Lightsy regularly posted on her private Facebook account about matters of public concern, including political issues.

54. None of Plaintiff's social media posts prior to September 10, including her posts about political issues, ever led to any discipline by the MTSU Defendants or any allegations of bias or an inability to be impartial in assessing and resolving student conduct matters.

**The MTSU Defendants Fire Plaintiff Because of Her Facebook Posts**

55. Just six minutes after Senator Blackburn's X post advocating for Ms. Sosh-Lightsy's termination from her employment with MTSU, at approximately 9:39 pm. on September 10, Plaintiff received a phone call from Dr. McPhee's executive assistant.

56. During the 9:39 p.m. phone call, Dr. McPhee's executive assistant informed Ms. Sosh-Lightsy that Dr. McPhee would be calling her in approximately 40 minutes and that Plaintiff would need to take the call from Dr. McPhee.

57. At approximately 10:42 p.m. on September 10, Dr. McPhee's executive assistant called Ms. Sosh-Lightsy again, this time to connect Plaintiff with Drs. McPhee and Kelley.

58. During the 10:42 p.m. phone call, Dr. McPhee stated to Ms. Sosh-Lightsy that her comments concerning Mr. Kirk's murder and his prior statements concerning gun violence allegedly caused irreparable harm to MTSU and that Plaintiff allegedly could no longer be trusted to work with MTSU's students.

59. During the 10:42 p.m. phone call, Dr. McPhee, on behalf of the MTSU Defendants, terminated Ms. Sosh-Lightsy's employment with MTSU, effective immediately.

60. At 10:51 p.m., just nine minutes after beginning the termination phone call with Plaintiff, Dr. McPhee, on behalf of the MTSU Defendants, issued a public statement concerning Ms. Sosh-Lightsy's termination: "An MTSU employee today offered inappropriate and callous

comments on social media concerning the horrific and tragic murder of Charlie Kirk. The comments by this employee, who worked in a position of trust directly with students, were inconsistent with our values and have undermined the university's credibility and reputation with our students, faculty, staff and the community at large. This employee has been fired effective immediately. We extend our deepest sympathies to the Kirk family."

61. On September 11, 2025, the MTSU Defendants sent Plaintiff the paperwork to terminate her employment via U.S. mail, which was signed by Dr. Kelley.

62. Ms. Sosh-Lightsy received the termination paperwork via U.S. mail on September 15, 2025.

63. A copy of the September 11 letter from Dr. Kelley terminating Plaintiff's employment is attached to this Complaint as Exhibit 1.

64. In his September 11 letter, Dr. Kelley states that the MTSU Defendants terminated Ms. Sosh-Lightsy's employment because of her Facebook posts about Mr. Kirk's murder and his prior statements concerning gun violence, which Dr. Kelley characterized as "insensitive."

65. Dr. Kelley's letter of September 11 is inconsistent with MTSU Policy 103, entitled Free Speech on Campus and attached to this Complaint as Exhibit 2, which states:

a. "MTSU is committed to maintaining a campus as a marketplace of ideas for all students and all faculty in which the free exchange of ideas is not to be suppressed because the ideas put forth are thought by some or even by most members of MTSU's community to be offensive, unwise, immoral, indecent, disagreeable, conservative, liberal, traditional, radical, or wrong-headed."

b. "Students and faculty are allowed to make judgments about ideas for themselves and to act on those judgments, not by seeking to suppress free speech, but by

openly and vigorously contesting the ideas they oppose."

   c. "It is not MTSU's role to attempt to shield individuals from free speech, including ideas and opinions they find offensive, unwise, immoral, indecent, disagreeable, conservative, liberal, traditional, radical, or wrong-headed."

   d. "Although MTSU greatly values civility and mutual respect, the University will not use concerns about civility and mutual respect as justification for closing off the discussion of ideas, however offensive, unwise, immoral, indecent, disagreeable, conservative, liberal, traditional, radical, or wrong-headed those ideas may be to some students or faculty."

   e. "Although all students and faculty are free to state their own views about and contest the views expressed on campus, and to state their own views on MTSU's campus, they may not substantially obstruct or otherwise substantially interfere with the freedom of others to express views they reject or even loathe. To this end, MTSU promotes a lively and fearless freedom of debate and deliberation and protects that freedom."

  66. According to Dr. Kelley's September 11 letter, Plaintiff's Facebook posts about Mr. Kirk's murder and his prior statements concerning gun violence allegedly damaged the perception that the MTSU community see Ms. Sosh-Lightsy "as an objective professional without agendas . . . to such an extent that we have determined that [Plaintiff] can no longer effectively assess and resolve any student conduct matters, particularly those involving students whose opinions align with Mr. Kirk's."

  67. Dr. Kelley's September 11 letter also alleges that Ms. Sosh-Lightsy's Facebook posts caused "disruption and interference with University operations."

  68. Dr. Kelley's letter cites only Plaintiff's protected speech on her private Facebook

page as a reason for her firing.

69.     **Less than four hours elapsed** in the evening between Plaintiff's first Facebook post concerning Mr. Kirk's murder and his prior statements about gun violence and Drs. McPhee and Kelley informing Ms. Sosh-Lightsy that she was fired, effective immediately.

70.     On information and belief, the only MTSU operations ongoing during that four-hour period, between approximately 7:00 p.m. and approximately 11:00 p.m., were night classes and student events.

71.     There is no evidence that there was any disruption to MTSU classes or student events on the night of September 10 based on Plaintiff's Facebook posts concerning Mr. Kirk's murder and his prior statements about gun violence, and Dr. Kelley's September 11 letter did not cite any alleged examples of such disruption.

72.     Considering Ms. Sosh-Lightsy's long career assessing and resolving student conduct and disciplinary matters without any allegations of bias, there is no evidence that Plaintiff's Facebook posts concerning Mr. Kirk's murder and his prior statements about gun violence would have caused any future disruption to MTSU's operations, and Dr. Kelley's September 11 letter did not cite any alleged examples of such disruption.

73.     **Just over one hour elapsed** between Senator Blackburn's X post, advocating for Plaintiff's termination, and Drs. McPhee and Kelley informing Plaintiff that she was fired.

74.     The MTSU Defendants terminated Ms. Sosh-Lightsy's employment with MTSU based on political pressure from Hurtt and/or Senator Blackburn and viewpoint discrimination, rather than based on any actual or potential disruption of MTSU's day-to-day operations.

75.     On approximately September 11, 2025, the MTSU Defendants ran a red-alert banner across the top of its homepage announcing Plaintiff's termination of employment.

76.     The red-alert banner is typically used for campus emergencies at MTSU, for example campus lockdowns and severe weather alerts.

77.     In her two decades of service at MTSU, Plaintiff does not recall ever having seen the red-alert banner used to announce the firing of an employee.

78.     The MTSU Defendants' novel use of the red-alert banner to publicize Ms. Sosh-Lightsy's termination shows that the MTSU Defendants intended to retaliate against Plaintiff for her protected speech on a matter of public concern and because the MTSU Defendants and/or Senator Blackburn did not agree with Ms. Sosh-Lightsy's viewpoint in her Facebook posts concerning Mr. Kirk's murder and his prior statements about gun violence.

79.     The MTSU Defendants' termination of Plaintiff's employment and public statements about Ms. Sosh-Lightsy have damaged her personal and professional reputation.

80.     Plaintiff's role as Associate Dean of Student Care and Conduct at MTSU included many job responsibilities, including but not limited to student care, assisting with Dean of Students responsibilities, and leadership team responsibilities.

81.     The MTSU Defendants could have removed Ms. Sosh-Lightsy's responsibility for assessing and resolving student conduct matters, and Plaintiff would have still had a full set of job responsibilities.

82.     The MTSU Defendants did not consider less-severe sanctions than terminating Ms. Sosh-Lightsy's employment in response to her protected speech on her private Facebook page on a matter of public concern.

83.     The MTSU Defendants not considering less-severe sanctions than terminating Plaintiff's employment shows that the MTSU Defendants intended to retaliate against Plaintiff for her protected speech on a matter of public concern and because the MTSU Defendants and/or Hurtt

19

and/or Senator Blackburn did not agree with Ms. Sosh-Lightsy's viewpoint in her Facebook posts concerning Mr. Kirk's murder and his prior statements about gun violence.

84. The MTSU Defendants have treated employees who are accused of serious criminal conduct better than it treated Plaintiff in response to her protected speech on a matter of public concern.

85. For example, the MTSU Defendants only suspended Nic Woodley ("Woodley"), former director of player personnel for the MTSU football team, in late 2023 after Woodley's arrest for indecent exposure and resisting arrest by the Murfreesboro police department.[1]

86. The basis for Woodley's arrest was allegedly exposing his genitals to a teenager at a Target store in Murfreesboro, Tennessee.

87. The MTSU Defendants allowed Woodley to resign his employment the next business day, rather than firing Woodley for alleged sexual misconduct with a minor victim and resisting arrest.

88. The MTSU Defendants did not issue a public statement concerning Woodley's arrest for alleged sexual misconduct with a minor victim and resisting arrest.

89. The MTSU Defendants did not issue a red-alert banner concerning Woodley's arrest for alleged sexual misconduct with a minor victim and resisting arrest.

90. The MTSU Defendants treating Woodley, an employee accused of criminal sexual misconduct with a minor, better than Ms. Sosh-Lightsy shows that the MTSU Defendants intended to retaliate against Plaintiff for her protected speech on a matter of public concern and because the MTSU Defendants and/or Hurtt and/or Senator Blackburn did not agree with Ms. Sosh-Lightsy's

---

[1] https://www.wsmv.com/2023/10/16/mtsu-football-staffer-charged-after-exposing-himself-teen-target-police-say/ (last accessed Nov. 5, 2025).

viewpoint in her Facebook posts.

91.    The MTSU Defendants' termination of Plaintiff's employment and public statements concerning Ms. Sosh-Lightsy caused her to receive dozens of harassing and threatening communications—including via email, Facebook Messenger, telephone calls, and U.S. mail—beginning on the night of September 10.

92.    Plaintiff filed a police report with the Murfreesboro Police Department on September 12, 2025, concerning the targeted harassment and threats—including at least one death threat and at least one online post of her address and a picture of her house.

93.    Ms. Sosh-Lightsy continues to receive harassing and threatening communications to this day.

94.    For approximately four days after Plaintiff's termination by the MTSU Defendants, she was unable to do anything other than cry and sleep due to the anxiety, depression, and fear she is suffering.

95.    For approximately two weeks after Ms. Sosh-Lightsy's termination by the MTSU Defendants, she was unable to go out in public.

96.    Plaintiff still generally avoids going out in public, as she feels like members of the public are looking at her, laughing at her, and threatening her due to her termination by the MTSU Defendants.

97.    Since her termination of employment by the MTSU Defendants, Ms. Sosh-Lightsy has had trouble thinking clearly and trouble focusing due to the anxiety, depression, harassment, and threats she is suffering.

98.    On October 28, 2025, Ms. Sosh-Lightsy participated in a meeting with Dr. Kelley concerning an internal employee grievance that she filed concerning MTSU's termination of her

employment.

99.     Dr. Kelley began the grievance meeting by asking for the first time whether Plaintiff personally posted the September 10 social media posts that resulted in her termination.

100.     The MTSU Defendants' failure to investigate whether Ms. Sosh-Lightsy made the social media posts that resulted in her termination until 48 days after MTSU fired her shows that the MTSU Defendants acted to retaliate against Plaintiff for her protected speech.

**COUNT I**
**First Amendment Retaliation Against the MTSU Defendants**
**42  U.S.C. § 1983**

101.     Plaintiff's private posts about Kirk's murder and his prior public statements concerning gun violence on her personal social media account are speech protected by the First Amendment.

102.     In her social media posts about Kirk, Ms. Sosh-Lightsy spoke as a private citizen on a matter of public concern, namely Kirk's murder and his prior public statements concerning gun violence.

103.     Plaintiff's interests in speaking on a matter of public concern, namely Kirk's murder and his prior public statements concerning gun violence, outweigh any contrary interest of the MTSU Defendants in MTSU's operations.

104.     Ms. Sosh-Lightsy's exercise of her right to free speech did not disrupt her performance of her job duties or any other MTSU operations.

105.     Plaintiff's exercise of her right to free speech would not have caused any future disruption to her performance of her job duties or any other MTSU operations.

106.     The MTSU Defendants took adverse actions against Ms. Sosh-Lightsy that would deter a person of ordinary firmness from continuing in speech protected by the First Amendment,

including but not limited to terminating Plaintiff's employment and making critical public statements about her that damaged her personal and professional reputation.

107. The MTSU Defendants' termination of Ms. Sosh-Lightsy's employment was motivated at least in part by Plaintiff's protected speech, as confirmed by Dr. McPhee's statements on September 10 and Dr. Kelley's letter of September 11.

108. The MTSU Defendants' termination of Ms. Sosh-Lightsy's employment was under color of law.

109. The MTSU Defendants' termination of Plaintiff's employment followed an official MTSU policy or policies that resulted in the violation of her constitutional rights, including but not limited to MTSU Policy 851, titled Disciplinary Policy for Administrative and Classified Personnel. A copy of MTSU Policy 851 is attached to this Complaint as Exhibit 3.

110. The MTSU Defendants singled out Ms. Sosh-Lightsy's speech for an adverse action based on her viewpoint, namely being critical of Kirk and his prior statements concerning gun violence.

111. The MTSU Defendants allowed third parties, including but not limited to Hurtt and/or Senator Backburn, to engage in a "heckler's veto" against Ms. Sosh-Lightsy, bowing to public pressure to terminate Plaintiff's employment for protected speech on a matter of public concern that the hecklers did not like based on the speech's viewpoint.

112. Plaintiff is entitled to declaratory relief.

113. Plaintiff is entitled to monetary relief, including but not limited to compensatory damages.

114. The intentional conduct and/or reckless disregard for Ms. Sosh-Lightsy's federally protected rights by Drs. McPhee and Kelley warrants an award of punitive damages to Plaintiff on

her individual-capacity claims against Drs. McPhee and Kelley.

115.   Ms. Sosh-Lightsy is entitled to recovery of her attorneys' fees and costs.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff prays for the following relief from this Court:

A.     Declaring that the MTSU Defendants' termination of Ms. Sosh-Lightsy's employment violated the First Amendment;

B.     Awarding damages to Plaintiff for the violation of her constitutional rights on her claims against the MTSU Defendants;

C.     Requiring the MTSU Defendants to pay all attorneys' fees that Ms. Sosh-Lightsy incurs to bring and to maintain this action;

D.     Requiring the MTSU Defendants to pay the costs and expenses of this action;

E.     Requiring the MTSU Defendants to pay any applicable pre-judgment and post-judgment interest; and

F.      Granting Plaintiff such other, further, and general relief to which she may be entitled.

## JURY DEMAND

Plaintiff demands a jury trial.

Dated: November 5, 2025       Respectfully submitted,

/s/ *Melody Fowler-Green*
Melody Fowler-Green (TN #023266)
/s/ *Charles P. Yezbak, III*
Charles P. Yezbak, III (TN #018965)
/s/ *N. Chase Teeples*
N. Chase Teeples (TN #032400)
YEZBAK LAW OFFICES PLLC
P.O. Box 159033
Nashville, TN 37215
Tel.: (615) 250-2000
Fax: (615) 250-2020
mel@yezbaklaw.com
yezbak@yezbaklaw.com
teeples@yezbaklaw.com

/s/ *Tess Medlin Heisserer*
Tess Medlin Heisserer (TN #037345)
EMPLOYLEGAL
611 Commerce St., Ste. 2611
Nashville, TN 37203
Tel.: (615) 854-9603
theisserer@forceforwork.com